## FORD VS. TALLMAN.

EXECUTION:   *What equity not subject to.*

B and R agreed to purchase a tract of land which was to have been sold by an executor for one-half cash, the balance in twelve months; R to make the first payment and B the last, and the land to be then conveyed to R and B's wife. B bid the land off, and, with R's money, made the first payment, and took the certificate of purchase from the executor in his own name, reciting the payment and stipulating to make deed to him upon making the last payment. When it became due they were unable to pay, and agreed that F should make the payment and take the executor's deed to himself as a security for repayment, and for improvements he might put upon the land; and B transferred to F the certificate of purchase, and he made the payment and obtained the executor's deed conveying the land to himself absolutely. Afterward judgments were recovered against B, and the land was levied on and sold to satisfy them, subject to redemption, and T purchased it at the sale and received the sheriff's certificate of purchase. Afterward, B and R being unable to pay F, they quit-claimed to him, upon his paying to them what they had paid on the land. Upon bill filed by F to cancel T's purchase and certificate and to quiet his own title to the land, *held:* That when B. took the certificate of purchase from the executor, he held the equitable title to the undivided half of the land for R, and to the other undivided half for himself, the legal title remaining in the executor, and passing, by his subsequent deed, to F; and that at the time of the recovery of the judgments, B had no interest in the land, legal or equitable, upon which a judgment lien could attach, or that was subject to sale under execution; and that F was entitled to the relief sought, whether he was in or out of possession of the land.

Ford vs. Tallman.

APPEAL from *Chicot* Circuit Court in Chancery.
Hon. THEODORICK F. SORRELLS, Circuit Judge.
*Reynolds*, for appellant.
*Rose, contra.*

ENGLISH, C. J. The bill in this case was filed on the chancery side of the circuit court of Chicot county, on the eighteenth of December, 1876, by William W. Ford against Joseph B. Tallman, alleging, in substance, as follows :

That at a sale of the real property of the estate of Curtis Garrett, deceased, made by his executor, on the twenty-seventh of December, 1873, Conway Barbour bid off certain tracts of land, which are described, at $1,726, the terms of sale being one-half in cash and the other half in one year, and paid $863, one-half the sum bid, and received a certificate of purchase from the executrix, acknowledging the cash payment and stating that he was to have a deed for the lands, on payment of the balance.

That the lands were bid off by Barbour in his own name, without the knowledge and consent of one Matilda Rankin, who furnished the money to make the cash payment, upon an understanding that she was to make the first payment, Barbour, for his wife, the second, and that the lands were to be owned by Matilda Rankin and her daughter, Frances, wife of Barbour, each to own an undivided half. That for the purpose of raising the money to make the cash payment on the lands, Matilda Rankin sold a lot belonging to her in Louisville, Kentucky, and, with the money thus obtained, the cash payment of $863 was made.

That Conway Barbour and Matilda Rankin failing and being unable to make the final payment on the lands when

it fell due, and Matilda Rankin desiring to protect herself in what she had paid, and said Barbour desiring to pay for the other half, as originally intended, applied to plaintiff for aid, and he agreed with them, in substance, that he would make the second payment and take the deed to himself, and hold the legal title to the lands, for his protection, and give said parties an opportunity of repaying him his money and such additional amount as he might expend on the place in the way of improvements and removing liens, etc., and in the event of such repayment the lands were to be conveyed by plaintiff to Matilda Rankin and Frances Barbour, as such was said to be the original agreement before the purchase of the lands, in December, 1873. That, in pursuance of said agreement, plaintiff paid the balance due on the lands, and received a deed from the executrix of said estate, bearing date June 16, 1875, (which in the progress of the cause was filed as an exhibit.)

That afterwards, on the fifth of July, 1875, one J. E. Joslyn obtained a judgment against Conway Barbour, in the Chicot circuit court, for $250, with 6 per cent. interest from October 1, 1872.

And on the sixth of the same month, in the same court, one Smith Mayberry recovered judgment against said Barbour for $21.25, etc.

That execution issued on the latter judgment the sixteenth of September, and, on the former, the eleventh of November, 1875, which were levied on the lands described in the bill, but they were not sold, on account of informality of notice. That, on the twenty-first of January, a *vend. ex.* was issued on each of the judgments, and on the eleventh of March, 1876, the lands were sold and purchased by defendant, for $376.50, who received a certificate of purchase from the sheriff.

Ford vs. Tallman.

That defendant claimed that unless said lands were re-deemed from him before the eleventh of March, 1877, by payment of said sum of $376.50, with interest, as provided by the redemption law of the state, he would insist upon a deed for the land from the sheriff.

That said sale and certificate, and the proceedings to subject said lands to the payment of said judgments against said Barbour, were clouds upon the title of plaintiff, and calculated to, and did, lessen its value in the market, and were an injury to him.

That on the fifth of June, 1876, said Matilda Rankin and Conway Barbour, finding that plaintiff could not be repaid the money advanced and expended by him, and would have to look to the lands as his only security against loss in his transactions in regard to the lands; and upon a settlement of the amounts expended and laid out by plain-tiff and by said Barbour and Matilda Rankin, it was ascer-tained that Matilda Rankin had expended, including inter-est on the $863 originally paid, the sum of $1,000, and that plaintiff had expended $1,542 18, and said Barbour had expended $57.82, and that the lands were worth, at that time, by estimate, $2,600; it was then agreed that plaintiff should pay to said Barbour said sum of $57.82, and to Matilda Rankin $1,000, in three payments, $333.33 cash, a like sum in one, and a like sum in two years, with 8 per cent. interest on the deferred payments; Matilda Rankin to be at the expense of a suit to remove the cloud from the title to said lands, created by the pro-ceedings to subject the same to the payment of said judg-ments, and purchase by defendant; and if said suit should be successful, then said sums of $333.33, due in one and two years respectively, to be paid in full, and if unsuccess-ful, then plaintiff to protect himself for any amount nec-

essary to remove said cloud, by withholding payment of said sums to that extent, and receive the quit-claim deed of said Barbour and his wife and said Matilda Rankin; and said sums were paid, and notes given for deferred payments, and deed of quit-claim executed and delivered, on the fifth day of June, 1876.

Plaintiff claims that at the date of said judgments against said Barbour, plaintiff was the owner of said lands levied on and sold by proceedings on said judgments; that Barbour never had any interest in said lands that was subject to sale under execution, or to lien of judgments against him; that the sale of said lands, and purchase by defendant, conveyed no interest to him, though casting a cloud upon the title of plaintiff, as he was advised; that if plaintiff should, however, be in error as to said sale not affecting his interest in said lands, and if said Barbour did in fact have an interest therein, which was by law subject to the payment of said judgments, and defendant will be entitled to a deed to said lands unless redeemed from said sale before the expiration of one year from the date of sale, plaintiff insists that by law he will be and is entitled to make such redemption upon that matter being determined by the court, and that defendant should be enjoined from presenting said certificate of purchase and demanding a deed from the sheriff for said lands, until the validity of said sale and the proceedings under said judgments and executions be determined by the court; and that, if it be determined that said sale was valid, plaintiff be given a day in which to redeem; and he offers to pay such sums, if any, as may be necessary to redeem said lands from said sale, at such times as may be decreed by the court; and that defendant be required to bring into court said certifi-

Ford vs. Tallman.

cate of purchase, that the same may be delivered up and canceled.

Prayer, that the sale be decreed to be of no validity, and that said certificate of purchase be canceled and set aside, and plaintiff's title quieted and the cloud created by said sale removed, and for all other proper relief.

After some steps in the cause, not material to notice, defendant filed a demurrer to the bill, on the ground that it did not state facts sufficient to constitute a cause of action. The court sustained the demurrer and dismissed the bill, and plaintiff appealed.

I. The demurrer admitting the allegations of the bill to be true, when Conway Barbour took the certificate of purchase from the executrix of Garrett's estate in his own name, he held an equitable title to one undivided half of the lands in trust for Matilda Rankin, she having furnished him with the money to pay one-half of his bid upon an agreement that she was to become the owner of an undivided half of the lands. *Trapnall's ad'x v. Brown, 19 Ark., 48; Ferguson, ex., et al., v. Williamson et al., 20 ib., 272.*

1. EXECU-TION:

What equity not subject to.

By virtue of the certificate of purchase Barbour held an equitable title to the other undivided half of the lands, and the executrix withheld the legal title to the whole of the lands as security for the unpaid purchase money.

So matters stood when Barbour bid off the land at the sale made by the executrix, on the twenty-seventh of December, 1873, and took the certificate of purchase in his own name.

After the remaining half of the purchase money became due to the executrix, and before the judgments under which appellee purchased were obtained against Barbour, and when, it seems, he had paid nothing of his own money upon the lands, he transferred his certificate of purchase

to appellant, who paid the executrix, and took a deed from
her, conveying to him absolute legal title to the lands, upon
an agreement with Barbour and Mrs. Rankin that when
he should be repaid the money so advanced, and any addi-
tional sum he might expend in improving the lands, re-
moving liens, etc., he was to convey the lands to Mrs. Ran-
kin and her daughter Frances, the wife of Barbour.

So matters stood when the judgments under which ap-
pellee purchased were rendered against Barbour, at which
time he had no title to the lands, legal or equitable, no in-
terest upon which the judgments could attach as liens, or
which could be sold under execution.    Appellant held the
whole title to the lands, subject to his agreement to convey
them to Mrs. Rankin and her daughter upon compliance
with the terms of the agreement.    It appears that the deed
from the executrix to appellant was filed for registration
in the recorder's office the fourteenth of December, 1875,
which was before appellee purchased the lands at execu-
tion sale.

Whether the arrangement between Barbour and appel-
lant, for the benefit of the wife of the former, was prejudi-
cial to his creditors, or made to defraud them, is not a
question on this appeal.    If there was any such feature in
the transaction, it should have been shown by answer.

II.    Whether appellant was in the actual possession of
the lands when he brought this suit does not appear from
the allegations of the bill.    He had terminated his agree-
ment to convey them to Mrs. Rankin and her daughter,
and obtained from them and Barbour a quit-claim deed.
He was indebted to Mrs. Rankin for balance of purchase
money on the new agreement, but that was a matter be-
tween them.    He held the legal title to the lands, and if
he was out and appellee in the actual possession of them,

he could have maintained ejectment against him. It can not be assumed that appellee was in possession of the land at the time this suit was brought. The time for redemption had not expired, and he was not entitled to a deed from the sheriff, nor to possession of the lands, until the expiration of a year from the date of the execution sale. (*Gantt's Dig., secs. 2703–9.*) The bill does not attempt to make the suit answer the purpose of an action of ejectment, there being no prayer for the possession of the lands. The object of the bill was to prevent appellee from obtaining the sheriff's deed, which would create a cloud upon appellant's title to the lands. This could not be accomplished by ejectment, or any other form of action at law. The only remedy was by a *quia timet* bill in chancery.

The bill makes a case for relief in equity, according to the principles settled in *Sale and wife v. McLean et al., 29 Ark., 618.*

Before the execution sale, appellant might have brought a bill to enjoin it. (*King et al. v. Clay et al., 34 Ark., 291.*) And no good reason now appears why he may not maintain this bill to prevent the execution of the sheriff's deed to appellee.

Reversed and remanded, with instructions to the court below to overrule the demurrer to the bill, and for further proceedings, etc.